# United States District Court, Northern District of Illinois



| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5841 | **DATE** | 5/7/2001 |
| **CASE TITLE** | Photogen, Inc. Vs. Gerald L. Wolf et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant Wolf's motion to dismiss counts five and six for lack of subject matter jurisdiction is granted, but his motion to dismiss the entire complaint for lack of venue and his motion to transfer are denied. Status hearing set for May 30, 2001 at 9:45am.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| | Notices mailed by judge's staff. | MAY 0 7 2001 |
| | Notified counsel by telephone. | date docketed |
| ✓ | Docketing to mail notices. | |
| | Mail A 450 form. | docketing deputy initials |
| | Copy to judge/magistrate judge. | |
| WAH | courtroom deputy's initials | date mailed notice |

00-7
FILED FOR DOCKETING
01 MAY -7 AM 9: 03

Date/time received in central Clerk's Office

mailing deputy initials

Document Number

22

| | | |
|---|---|---|
| PHOTOGEN, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 00 C 5841 |
| | ) | |
| GERALD L. WOLF and | ) | |
| THE GENERAL HOSPITAL CORP., | ) | |
| | ) | |
| Defendants. | ) | |

*DOCKETED*
*MAY 0 7 2001*

## MEMORANDUM OPINION AND ORDER

This case involves a dispute between a research physician, the hospital where he worked and a bio-technology company that sponsored his research. Plaintiff Photogen, Inc. filed a six-count amended complaint against defendants Dr. Gerald L. Wolf and General Hospital Corp., d/b/a Massachusetts General Hospital (MGH), alleging breach of contract, misappropriation of trade secrets, conversion, and breach of fiduciary duty. Plaintiff also seeks declaratory judgments that it did not breach one of the contracts, and exclusively owns certain inventions. Wolf moves to dismiss for lack of venue, or, alternatively, to transfer this case to the District of Massachusetts. Wolf further moves to dismiss counts five and six on subject matter jurisdiction grounds. For the following reasons, the motion to dismiss for lack of venue is denied, the motion for transfer is denied, and the motion to dismiss counts five and six is granted.

## BACKGROUND

Photogen is a Tennessee corporation, based in Knoxville. It also operates a facility in Westborough, Massachusetts. MGH is a Massachusetts corporation, with a primary place of business in Boston. Wolf is an individual, residing in Massachusetts.

Wolf was originally employed by MGH. Beginning in 1998, Photogen agreed to sponsor a research project at MGH, with Wolf as the principal investigator. At various times this relationship was defined by three contracts, included as exhibits to the complaint: (A) a Confidential Disclosure Agreement (CDA), effective July 7, 1998; (B) a Research Agreement, effective October 12, 1998; and (C) an Employment Agreement, effective July 1, 1999. Neither the CDA nor the employment agreement contains a forum selection clause. The research agreement, however, included a provision selecting state or federal courts in Chicago as the exclusive fora for disputes relating to that contract. Wolf, as the principal investigator, joined in this agreement. Photogen eventually hired Wolf as its own employee, pursuant to the employment agreement.

Throughout this research project Wolf made several presentations to Photogen's board of directors in Chicago. At one of these meetings he claimed he had invented certain discoveries that Photogen maintains are its own, and indicated he intended to publish his findings. He further claimed that the CDA did not apply to him and that Photogen had breached it.

## DISCUSSION

### I. Subject Matter Jurisdiction

Count five seeks a declaration that Photogen did not breach the CDA. Wolf counters that the court does not have jurisdiction over this claim because there is no actual controversy. "The existence of an actual controversy is an absolute predicate for declaratory judgment jurisdiction." Spectronics Corp. v. H.B. Fuller Co., 940 F.2d 631, 633-34 (Fed. Cir. 1991).

To create an actual controversy for declaratory relief the plaintiff must have a reasonable apprehension of being sued. See Fina Oil and Chem. Co. v. Ewen, 123 F.3d 1466,

1470 (Fed. Cir. 1997). The parties to the CDA were MGH and Photogen. Wolf signed the agreement and agreed to be bound by MGH's obligations, but did not necessarily assume all of MGH's rights. There is nothing in the document to suggest that Wolf had any right to sue individually on the contract. If Wolf has no right to bring suit against Photogen, plaintiffs cannot reasonably apprehend a suit based exclusively on his statements. *See* Chou v. University of Chicago, 2000 WL 222638 at *2 (N.D. Ill. Feb. 22, 2000). Moreover, plaintiff has not alleged that MGH threatened any action against Photogen. Statements by an employee, unless actually or apparently empowered to initiate suit on the employer's behalf, do not create an actual controversy. *See* Sherman Treaters, Ltd. v. Ahlbrandt, 607 F.Supp. 939, 943 (D.D.C. 1985) (conduct by licensee not imputed to patentee), *citing* Dr. Beck & Co. v. General Elec. Co., 317 F.2d 538, 539 (2d Cir. 1963) (statement by defendant's employee not imputed to employer). As discussed above, the CDA does not give Wolf such apparent authority. Plaintiff has alleged nothing more than that Wolf was an MGH employee when he leveled his charges. This is insufficient to create an actual controversy.

Count six seeks a declaration that Photogen is the sole inventor of certain products for which patents are pending, and the sole owner of any intellectual property rights which may issue. We do not know what if any rights the Patent and Trademark Office (PTO) will confer on plaintiff. We may not declare ownership of hypothetical rights. *See* GAF Bldg. Materials Corp. v. Elk Corp. of Dallas, 90 F.3d 479, 482 (Fed. Cir. 1996); *see also* Display Research Lab. v. Telegen Corp., 133 F.Supp.2d 1170, 58 U.S.P.Q.2d 1149, 1153 (N.D. Cal. 2001) (distinguishing between declaration that plaintiff should be named as inventor and declaration that it owns patent application). Consequently, we have no jurisdiction over the portion of count six seeking an ownership declaration.

Two other districts have considered whether they had jurisdiction under 35 U.S.C. § 116 to resolve inventorship disputes while a patent application was still pending. Both concluded that they did and we agree. *See* Heineken Technical Serv. v. Darby, 103 F.Supp.2d 476, 479 (D. Mass. 2000); Display Research Lab., 58 U.S.P.Q.2d at 1153.[1] But this claim also has the same problem that made count five deficient. Having surrendered any rights he held to MGH, Wolf admits he has no rights as an inventor. Consequently, he has no standing to bring suit against Photogen. *See* Chou, 2000 WL 222638 at *2 (finding no standing for employee to bring suit because she had surrendered rights to employer). Further, his statements do not constitute a threat on behalf of his employer, MGH. *See* Sherman Treaters, 607 F.Supp. at 943. Because Wolf has no standing to sue, and because Photogen has no reasonable basis for apprehending a suit by MGH, there is no actual controversy over who is the proper inventor. We therefore dismiss the remainder of count six.

Count six was the only one purporting to raise a federal question. Having dismissed it, the remaining claims all arise under state law (breach of contract, trade secrets, conversion and breach of fiduciary duty). Because this case is still within our diversity jurisdiction, 28 U.S.C. § 1332, we now address Wolf's venue and transfer motions.

## II. Venue

Wolf raises three arguments why venue is improper in this district. The forum clause is unenforceable. Wolf was not a party to the research agreement. This suit is not based on the research agreement.

---

[1] Because there is another mechanism for resolving inventorship disputes, an interference proceeding before the PTO, the Display Research Lab. court ultimately exercised its discretion not to issue a declaration. But the court did find, as a matter of law, that it had jurisdiction. *See id.* We agree with this analysis both that jurisdiction is proper and that an interference is generally a better avenue. Because we find there is no actual controversy, however, we need not decide whether to exercise our discretion here.

First, Wolf challenges the forum selection clause as unenforceable. Since the Supreme Court's decision in <u>M/S Bremen v. Zapata Off-Shore Co.</u>, 407 U.S. 1 (1972), federal courts have consistently held that forum selection clauses are presumptively enforceable. *See, e.g.,* <u>Heller Fin., Inc. v. Midwhey Powder Co.</u>, 883 F.2d 1286, 1290 (7th Cir. 1989). The party challenging enforcement must show that it is unreasonable, unjust or that "enforcement would contravene a strong public policy of the forum in which suit is brought." <u>M/S Bremen</u>, 407 U.S. at 15. Wolf asserts that both defendants are from Massachusetts, the contracts were made in Massachusetts, the actions in question primarily occurred in Massachusetts and all the relevant documents are in Massachusetts. He contends that because this matter has no meaningful connection to Chicago it is unreasonable to select this district as a forum. These facts, however, only speak to the convenience of trying the case here, compared to Massachusetts.

> Where it can be said with reasonable assurance that at the time they entered the contract, the parties ... contemplated the claimed inconvenience, it is difficult to see why any such claim of inconvenience should be heard to render the forum clause unenforceable. ... In such circumstances it should be incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.

<u>M/S Bremen</u>, 407 U.S. at 16, 18. Although none of the parties is based in Illinois, this is their chosen forum. Plaintiff asserts that the parties specifically rejected Massachusetts and Tennessee because neither wanted to litigate disputes in the other's home jurisdiction. Photogen has some ties to Chicago through its board of directors, and Wolf made several trips here in the course of his work. This is not an unreasonable compromise, and it is certainly not unjust. It is a neutral and competent forum. Trying this case in Chicago may be less convenient for defendants than Boston, but it does not effectively deny them their day in court.

Further, the Seventh Circuit has clearly held that public policy favors enforcing forum selection clauses. These provisions are treated the same as any other contractual clause. *See* Northwestern Nat'l Ins. Co. v. Donovan, 916 F.2d 372, 376 (7th Cir. 1990).[2] The parties appear to have made an informed decision following arms-length negotiations. There is no evidence that this was an adhesive contract. And based on the content of the various agreements, disputes about confidentiality and ownership of proprietary information are almost certainly the types of controversies the parties had in mind when making this agreement. Wolf has not given us any reason to second-guess the parties' choice. The forum selection clause is valid.

Second, Wolf argues that the clause is not enforceable against him because he was not a party to the research agreement. The contract defines Photogen and MGH as the parties (cplt. exh.B, p.1), and the forum selection clause applies specifically to the "Parties." It reads, in part:

> Each Party submits to the exclusive jurisdiction of any state or federal court sitting in Chicago, Illinois in any action or proceeding relating to this Agreement and each Party agrees that all claims in respect of the action or proceeding may be heard and determined only in any such court. Each of such Parties waive any defense of inconvenient forum to the maintenance of any action or proceeding so brought.

(cplt. exh.B, p.13, ¶19). But the contract also expressly addresses Wolf's status. "Each person engaged by [MGH] as an Investigator hereby joins into this Agreement and agrees to become bound by all terms applicable to him or her and in particular, Sections 1, 7(b) and 13" (cplt. exh.B., p.14, ¶20). Wolf signed the agreement under the statement, "Joined into by the following Investigators." *Disting* Sparks Tune-Up Centers, Inc. v. Strong, 1994 WL 188211 at *5 (N.D. Ill. May 12, 1994) (refusing to apply forum clause against parties who had not

---

[2] The only justification for treating it differently, the court noted, is potential third party effects, which are more appropriately addressed by a § 1404(a) transfer than by striking down the clause. *See id.*

signed contract).

Wolf now contends that he is not subject to the forum selection clause, because clause 20 only lists specific sections as applicable to investigators but does not include clause 19. The text, however, indicates otherwise -- he is bound by "all terms applicable to him." The forum selection clause is certainly "capable of being applied" to Dr. Wolf. *See* Webster's Third New Int'l Dictionary 105 (1981). Further, the use of the introductory phrase "in particular" in clause 20 negates any inference that the list is exhaustive. Applying the plain meaning of this clause, Wolf is subject to the forum selection provision.

Third, Wolf argues that the forum selection clause should not control this suit because it does not relate exclusively to the research agreement and the other two contracts do not contain such clauses. The CDA and employment agreement are indeed silent about fora. This does not mean disputes involving them cannot be litigated here. The issues related to the research agreement, however, must be litigated here, and the claims are largely intertwined. The same actions could arguably breach all three agreements, and the research agreement's terms defining proprietary information and outlining Wolf's duties are relevant to whether any trade secrets were misappropriated or property converted. We also note that under Massachusetts law, which the contracts explicitly select, "[w]here two or more contracts are part of a single transaction and appear in combination ... to constitute entire understanding of the parties, the contracts are customarily read together as one, integrated agreement." Leasecomm Corp. v. Crockett, 1998 WL 15935 at *3 (Mass. App. Div. Jan. 13, 1998). The CDA was clearly part of the same transaction as the research agreement. By its terms, the parties created it to protect disclosures made in the course of negotiating the research agreement, and it was signed by Wolf, MGH and Photogen, the same parties who signed the

research agreement. Consequently, the forum selection clause would also apply to disputes related to the CDA.

Count four, the fiduciary duty claim, relates exclusively to the employment agreement. It is predicated on Wolf's duties as a Photogen employee and officer. But the doctrine of pendent venue permits us to hear this claim as well. *See* VMS/PCA Ltd. P'ship v. PCA Partners Ltd. P'ship, 727 F.Supp. 1167, 1173-74 (N.D. Ill. 1989); Serpico v. Laborers' Int'l Union of North America, 1995 WL 479569 at \*5 (N.D. Ill. Aug. 5, 1995). Plaintiff's claims rely on many of the same underlying facts. Wolf's refusal to disclose research findings to Photogen, his assertions that he is a co-inventor and his expressed intentions to publish his findings, actions that allegedly breached Wolf's fiduciary duty, arguably also violated the research agreement. Forcing Photogen to prove the same facts in separate trials, in order to present alternate legal theories, would disserve judicial economy.[3] It is far better for one court to hear this entire case together.

## III. Transfer

Wolf also moves that, regardless of the forum selection clause, we transfer this case to the District of Massachusetts. Motions for transfer are governed by federal law, even in diversity cases. *See* Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22 (1988). The statute provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The district court has discretion to make an "individualized, case-by-case consideration of convenience and fairness." Van Dusen v. Barrack, 376 U.S. 612,

---

[3] Wolf, citing judicial economy and efficiency interests, previously argued that MGH was an indispensable party. Plaintiff amended its complaint to add MGH as a party so that a single trial could address this matter in its entirety. It would be particularly inequitable to now sever it.

622 (1964).

The Supreme Court has explicitly held that a forum selection clause is not dispositive in considering a motion for transfer, but it "will be a significant factor that figures centrally in the district court's calculus." Stewart, 487 U.S. at 29. The statute enumerates four factors: (1) venue is proper in both the transferor and transferee district; (2) the convenience of the parties; (3) the convenience of witnesses; and (4) the interests of justice. Movants bear the burden to show that the "transferee forum is clearly more convenient." Heller Financial, Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1293 (7th Cir. 1989).

The first two factors do not merit substantial discussion. As we explained above, venue is proper here by the parties' consent. It is also proper in Massachusetts for the reasons Wolf argues – both defendants are from Massachusetts, many of the acts in question occurred there, etc. See 28 U.S.C. § 1391(a). And defendants have waived convenience of the parties. "The presence of a valid forum selection clause prevents a defendant from asserting its own inconvenience as a reason supporting its motion to transfer." FUL Inc. v Unified School Dist. No. 204, 839 F.Supp. 1307, 1311 (N.D. Ill. 1993).

Turning to the third factor, convenience of witnesses includes the number of witnesses in each district (including the nature and importance of their testimony), access to sources of proof, and the situs of material events. See Household Fin. Serv., Inc. v. Northern Trade Mortgage Corp., 1999 WL 782072 at *5 (N.D. Ill. Sept. 27, 1999). Many potential witnesses reside in either Massachusetts or Tennessee. The latter will be equally inconvenienced by a trial in Boston or in Chicago. More importantly, all the witnesses Wolf has identified are

employees of the parties.[4] The parties will presumably ensure that they are available to testify wherever the trial is held. *See* <u>College Craft Co. v. Perry</u>, 889 F.Supp. 1052, 1055 (N.D. Ill. 1995); <u>FUL</u>, 839 F.Supp. at 1311-12. Movant has not identified any non-party witness who is located out of this jurisdiction.[5] Plaintiff, however, has identified several potential witnesses who do reside in Illinois, including its patent counsel and auditors.[6] Both parties have asserted that there are important documents in their respective preferred fora. Documents and records are usually not a very persuasive reason to transfer a case. *See* <u>Household Financial Services</u>, 1999 WL 782072 at *6. They are easily transportable, and movant has made no showing that it cannot bring the necessary documents to this district.

The "interests of justice" do weigh slightly in favor of Massachusetts as a forum. The federal courts in Boston obviously have more experience with Massachusetts state law than this court does. And Massachusetts also has an interest in its employees and its public policy. But these interests are not particularly compelling here. This court has substantial experience with other jurisdictions' laws and can apply Massachusetts law competently and fairly. Moreover, the parties explicitly accepted this scenario in contracting both to apply Massachusetts law and for a Chicago forum. Massachusetts public policy also favors enforcing forum selection clauses. *See* <u>Jacobson v. Mailboxes, Etc. U.S.A., Inc.</u>, 646 N.E.2d 741 (Mass. 1995). Other public

---

[4] *See* Wolf br. at 11 ("Photogen's other Massachusetts scientists, as well as scientists and administrators from MGH, may be needed to testify."); *see also* Gottfried aff. at ¶ 4 (naming specific MGH and Photogen employees who comprise Wolf's witness list).

[5] Even if there are witnesses who cannot, or will not, come to this district, this evidence can be presented by videotaped deposition. *See* <u>Household Fin. Serv.</u>, 1999 WL 782072 at *5.

[6] Wolf correctly argues that we should not consider convenience to plaintiff's counsel. *See* <u>Von Holdt v. Husky Injection Molding Sys., Ltd.</u>, 887 F.Supp. 185, 190 (N.D. Ill. 1995). We do not consider convenience to trial counsel. Photogen, however, has proffered its patent counsel as a potential fact witness. That a witness happens to be an attorney does not preclude us from considering that person's convenience as we would any others'.

interests include ensuring a speedy trial and trying related litigation together. *See* <u>Heller Fin.</u>, 883 F.2d at 1293. These can be accomplished in either forum.

It would certainly be reasonable to try this case in Massachusetts. But none of Wolf's arguments is overwhelming, and all are mitigated by other factors. The Supreme Court has made clear that the forum selection clause should figure centrally in our calculus, <u>Stewart</u>, 487 U.S. at 29, and the Seventh Circuit admonished that we should not permit parties to use transfer motions to circumvent enforceable clauses, <u>Northwestern Nat'l Ins. Co.</u>, 916 F.2d at 378. Considering both the convenience of non-party witnesses and the interest of justice, Wolf has not shown that Massachusetts is a clearly superior forum. Consistent with both federal and Massachusetts public policy, we enforce the parties' wishes as expressed in their contract.

<u>CONCLUSION</u>

For the foregoing reasons, defendant Wolf's motion to dismiss counts five and six for lack of subject matter jurisdiction is granted, but his motion to dismiss the entire complaint for lack of venue and his motion to transfer are denied.

JAMES B. MORAN
Senior Judge, U. S. District Court

May 7 , 2001.